JASON DE BRETTEVILLE, State Bar No. 195069
  jdebretteville@sycr.com
JUSTIN N. OWENS, State Bar No. 254733
  jowens@sycr.com
KENNETH P. HSU, State Bar No. 306326
  khsu@sycr.com
STRADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

Attorneys for Defendants
ENDOLOGIX, INC., JOHN MCDERMOTT,
and VASEEM MAHBOOB

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| VICKY NGUYEN, Individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ENDOLOGIX, INC., JOHN MCDERMOTT, and VASEEM MAHBOOB,<br><br>　　　　　Defendants. | CASE NO.: 2:17-cv-00017 AB (PLAx) (Consolidated with 8:17-cv-00061 AB (PLAx))<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>Date:　November 17, 2017<br>Time:　10:00 a.m.<br>Dept:　7B<br>Judge:　Hon. André Birotte Jr. |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. Plaintiff's New Allegations Require an Amended Complaint .............2

    B. The FAC Fails to Allege Falsity ..........................................................3

        1. Plaintiff Admits that the U.S. Clinical Data Is "Positive," and that Nellix Is "Still Eligible for Approval".........................3

        2. The FAC Does Not Allege that the FDA Considered Anecdotal Reports of Migration from Europe ..........................4

        3. The European Migration Issue Was Public Knowledge ............6

    C. CW1 Lacks Foundation Regarding Eligibility for FDA Approval..................................................................................................8

    D. The Alleged Misstatements Are Opinion Statements.........................10

    E. The Alleged Misstatements Are "Forward-Looking" and Accompanied by Meaningful Cautionary Language..........................11

    F. Defendants' Stock Sales Negate a "Strong Inference" of Scienter..............................................................................................13

    G. The FAC Fails to Allege Loss Causation ...........................................14

III. CONCLUSION ....................................................................................................15

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-i-

TABLE OF CONTENTS

LITIOC/2164860/018854-0088

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re American Apparel, Inc. Shareholder Litigation*,
   No. CV 10-06352, 2013 U.S. Dist. LEXIS 6977 (C.D. Cal. Jan. 16, 2013) .................................................................................................................. 10

*In re Apple Computer Securities Litigation*,
   886 F.2d 1109 (9th Cir. 1989) .................................................................................. 7

*Brodsky v. Yahoo! Inc.*,
   630 F. Supp. 2d 1104 (N.D. Cal. 2009) ................................................................. 10

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
   856 F.3d 605 (9th Cir. 2017) .................................................................................. 10

*City of Marysville Gen. Emples. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*,
   No. 09-cv-00659-EJL, 2011 U.S. Dist. LEXIS 116893 (D. Idaho Sep. 12, 2011) ............................................................................................................ 12

*In re Connetics Corp. Securities Litigation*,
   No. C 07-02940 SI, 2008 U.S. Dist. LEXIS 62515 (N.D. Cal. Aug. 14, 2008) ............................................................................................................. 11, 12

*In re Copper Mountain Securities Litigation*,
   311 F. Supp. 2d 857 (N.D. Cal. 2004) ................................................................... 11

*DeMarco v. Depotech Corp.*,
   149 F. Supp. 2d 1212 (S.D. Cal. 2001) .................................................................. 13

*In re First Union Corp. Securities Litigation*,
   128 F. Supp. 2d 871 (W.D.N.C. 2001) .................................................................. 13

*Gammel v. Hewlett-Packard Co.*,
   905 F. Supp. 2d 1052 (C.D. Cal. 2012) ................................................................. 13

*General Partner Glenn Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) .................................................................................... 5

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-i-
TABLE OF AUTHORITIES
LITIOC/2164860/018854-0088

*Harr v. Ampio Pharmaceuticals, Inc.*,
   No. CV 15-03474 TJH, 2016 U.S. Dist. LEXIS 185332 (C.D. Cal.
   Aug. 4, 2016) ............................................................................................................ 9

*In re Impac Mortgage Holdings, Inc.*,
   554 F. Supp. 2d 1083 (C.D. Cal. 2008) ................................................................. 11

*In re Juno Therapeutics, Inc.*,
   No. C16-1069RSM, 2017 U.S. Dist. LEXIS 91608 (W.D. Wash.
   June 14, 2017) ........................................................................................................ 14

*Kovtun v. Vivus, Inc.*,
   No. C 10-4957 PJH, 2012 U.S. Dist. LEXIS 139548 (N.D. Cal.
   Sep. 27, 2012) ........................................................................................................ 12

*Kuromiya v. United States*,
   78 F. Supp. 2d 367 (E.D. Pa. 1999) ........................................................................ 5

*Kyung Cho v. UCBH Holdings, Inc.*,
   890 F. Supp. 2d 1190 (N.D. Cal. 2012) ................................................................. 14

*In re Leapfrog Enterprise Securities Litigation*,
   237 F. Supp. 3d 943 (N.D. Cal. 2017) ................................................................... 13

*Lomingkit v. Apollo Education Group Inc.*,
   No. CV-16-00689, 2017 U.S. Dist. LEXIS 22374 (D. Ariz. Feb.
   16, 2017) ................................................................................................................ 10

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ................................................................................. 3

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v.
   America West Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ................................................................................... 6

*In re Nuvelo, Inc. Securities Litigation*,
   No. C 07-4056 VRW, 2008 U.S. Dist. LEXIS 98441 (N.D. Cal.
   Dec. 4, 2008) ................................................................................................... 12, 13

*Omnicare, Inc. v. Laborers Dist. Council Construction Industry
   Pension Fund*,
   135 S. Ct. 1318 (2015) .......................................................................................... 10

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-ii-
TABLE OF AUTHORITIES
LITIOC/2164860/018854-0088

*In re REMEC Inc. Securities Litigation*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010) .............................................................. 14

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
   697 F.3d 869 (9th Cir. 2012) ............................................................................. 13

*Schueneman v. Arena Pharmacueticals, Inc.*,
   840 F.3d 698 (9th Cir. 2016) ............................................................................... 8

*Simeon Management Corp. v. FTC*,
   579 F.2d 1137 (9th Cir. 1978) ............................................................................. 5

*Stack v. Lobo*,
   903 F. Supp. 1361 (N.D. Cal. 1995) .................................................................. 15

*In re Syntex Corp. Securities Litigation*,
   95 F.3d 922 (9th Cir. 1996) ............................................................................... 10

*In re Wet Seal Securities Litigation*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................. 11

*WPP Luxemburg Gamma Three Sarl v. Spot Runner*,
   No. CV 09-2487, 2009 U.S. Dist. LEXIS 136316 (C.D. Cal. Sep.
   14, 2009) .............................................................................................................. 2

*Yanek v. STAAR Surgical Co.*,
   388 F. Supp. 2d 1110 (C.D. Cal. 2005) ............................................................... 8

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...................................................................... 3, 8, 9

**Other Authorities**

21 C.F.R. § 860.7(c)(2) ............................................................................................ 5

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iii-
TABLE OF AUTHORITIES
LITIOC/2164860/018854-0088

## I. INTRODUCTION

The Opposition concedes that the FAC does *not* allege that Defendants (i) made inaccurate statements regarding the data from the U.S. Clinical Study; (ii) misled the FDA; or (iii) failed to make prompt disclosures regarding any negative news from the FDA. Instead, the FAC alleges that Defendants' optimistic statements about Nellix's potential approval by the FDA were misleading because Nellix was "*ineligible* for FDA approval in the U.S." due to anecdotal instances of migration identified in *Europe*, where Nellix was, and continues to be, approved for commercial use. (FAC ¶¶ 4, 40, 103, 109, 113, 118 (emphasis added).) The FAC, however, provides no basis for the necessary assumption underlying this allegation, *i.e.*, the FAC does not allege that the FDA has or ever would consider European reports of migration in commercial cases as part of determining Nellix's "eligibility" for approval. Worse still, Plaintiff actually concedes that Nellix is in fact "still *eligible* for approval" by the FDA. (Opp'n at 2:4-5; FAC ¶¶ 58, 70, 99 (emphasis added).)

The FAC's incoherent fraud allegations are the product of Plaintiff's heavy reliance on statements attributed to CW1, which are replete with allegations about migration in European commercial cases, but *never* touch upon the U.S. Clinical Study. This is not mere oversight. CW1 allegedly left the Company just weeks into the twelve-month Class Period, and is not alleged to have any knowledge of the U.S. Clinical Study or the FDA approval process. As a result, the FAC fails to plead any facts supporting its contention that anecdotal reports of migration in European commercial cases "made the Nellix EVAS System ineligible for FDA approval in the U.S." (FAC ¶¶ 103, 109, 113, 118.)

Faced with this fatal gap, the Opposition manufactures new allegations, including a new claim that Endologix not only was aware of, but actually relied upon data from European commercial cases in seeking FDA approval. (Opp'n at 2:13-15; 4:16-27.) These new allegations, at best, confirm the need for dismissal

-1-

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

and the filing of an amended complaint. But even worse, Plaintiff alleges facts that *contradict* the FAC's core assertion of a hidden, severe, and "unsolvable" safety problem that renders Nellix "ineligible" for approval by the FDA. For example, Plaintiff concedes that:

- Defendants accurately disclosed the U.S. Clinical Study data, that this data was "positive", and that Nellix "met the endpoints in the trial" including "the primary safety endpoint[.]"  (Opp'n at 17:24; FAC ¶ 58.)

- When Defendants identified migration in the U.S. Clinical Study data, they timely and accurately disclosed this data to investors, with no negative market reaction.  (Opp'n at 8:6-16; FAC ¶¶ 68-70.)

- The purportedly concealed issue of migration in European commercial cases was published in scientific journals known to analysts and discussed on earnings calls.  (Opp'n at 20:18-23, 8:6-16; FAC ¶¶ 66-70.)

- Despite the purported "safety" issue, Endologix continues to market Nellix in Europe under its CE mark, and the FDA is allowing patients to be treated with Nellix in a "confirmatory" study.  (FAC ¶¶ 40, 45, 99.)

The FAC pleads a conflicted, incomplete, and incoherent non-fraud. But even if its fraud theory made sense, and was supported by the particularized factual allegations required by the PSLRA and Rule 9, it would still fail to plead a securities fraud claim for at least two reasons: (i) Defendants purchased—and never sold—Endologix stock during the Class Period, which negates any inference of scienter; and (ii) Defendants' alleged misstatements about potential FDA approval are "forward-looking" and thus protected by the PSLRA's safe harbor.

## II.   ARGUMENT

### A.   Plaintiff's New Allegations Require an Amended Complaint

On a motion to dismiss, "a court must consider the allegations in the complaint, not the opposition." *WPP Luxemburg Gamma Three Sarl v. Spot Runner*, No. CV 09-2487, 2009 U.S. Dist. LEXIS 136316, at *14 (C.D. Cal. Sep. 14, 2009). As described below, the FAC suffers from fundamental flaws, including the admissions that: (i) Defendants accurately disclosed the data from the U.S. Clinical Study including the rates of migration; (ii) the migration issue identified in European commercial cases was public knowledge; (iii) Nellix

-2-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

remains eligible for FDA approval; and (iv) Defendants bought stock during the Class Period.  The Opposition, in turn, attempts to overcome each of these failings by alleging new facts that are *not* in the FAC, including:

- A new assertion that the FDA considered something other than the data from the U.S. Clinical Study:  "Endologix did not rely solely on the [U.S. Clinical Study] for evidence on Nellix's safety and effectiveness." (*Id.* at 4:21-22.)
- A new allegation that certain disclosures were made only to industry experts: "[T]he [SAS] meeting was attended only by experts in the field of endovascular aneurysm sealing and no articles or meeting minutes were publicly released to investors." (*Id.* at 20:28-21:3.)
- A new definition of what "eligibility" for approval by the FDA allegedly means: "[A] device is always 'still eligible for approval' if a sponsor successfully addresses the reasons for rejection." (Opp'n at 2:6-7.)
- A new claim that Defendants' stock purchases might have been: "pursuant to a 10b5-1 trading plan." (*Id.* at 24:13-15.)

The very fact that Plaintiff must resort to making these new claims reveals the FAC's deficiency, and the concomitant need for dismissal and amendment.  If Plaintiff's new allegations have a reasonable basis, they must be *pled* in an amended complaint, not merely *argued* in an opposition brief.

**B.    The FAC Fails to Allege Falsity**

**1.    Plaintiff Admits that the U.S. Clinical Data Is "Positive," and that Nellix Is "Still Eligible for Approval"**

"[T]o properly allege falsity, a securities fraud complaint must now 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading[.]'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009); *see Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) (PSLRA "has exacting requirements for pleading 'falsity'").  Here, Plaintiff's "reason why" the alleged statements are misleading is the pervasive assertion that Nellix is "ineligible" for FDA approval.  (FAC ¶¶ 10, 103, 109, 113, 118.)  That assertion not only lacks particularized factual support, it is directly contradicted by the facts alleged in the FAC, including the "successful" initial trial, the ongoing "confirmatory" study, and the admission that Nellix is *not*

-3-

"ineligible" for FDA approval, but is in fact "still eligible for approval and the FDA never commented negatively on the U.S. Study." (Opp'n at 2:4-5; FAC ¶ 99.)

The Opposition admits that the FAC "does not take issue with the study data" comprising the PMA application, or with Defendants' characterization of that data as "positive". (Opp'n at 15 n.9.) Plaintiff is not in "disagreement[] with defendants' interpretation of data[.]" (*Id.*) Rather, the FAC concedes that the U.S. Clinical Study was "successful" and "met the endpoints in the trial", including "the primary safety endpoint," and that the FDA "responded favorably" to the results despite later requesting additional follow-up data and a "confirmatory" study. (FAC ¶¶ 58-59, 62-63, 69-70, 116.) Moreover, Plaintiff's admission that Nellix is "still eligible" for FDA approval directly contradicts the FAC's foundational allegation that Defendants' optimism regarding FDA approval was false because Nellix is "ineligible for FDA approval[.]" (*E.g., id.* ¶ 109.) This contradiction leaves the FAC with no intelligible allegation of falsity and thus requires dismissal.

## 2. The FAC Does Not Allege that the FDA Considered Anecdotal Reports of Migration from Europe

The Opposition, like the FAC, asserts that Defendants' optimistic statements about potential FDA approval were false because Defendants purportedly knew that migration identified in *European* commercial cases rendered Nellix "ineligible" for approval by the FDA in the *United States*. (Opp'n at 11:14-15; FAC ¶¶ 10, 103, 109, 113, 118.) Plaintiff, however, does not point to allegations in the FAC indicating that the FDA has ever considered anecdotal reports from European commercial cases in evaluating a device for approval, let alone that the FDA did so in this case.

To the contrary, Plaintiff admits that "there is nothing in the [FAC] as to what the FDA actually said to Defendants about its reasons" for subsequently requesting additional data. (Opp'n at 2:10-11.) Plaintiff then tries to plug this hole by claiming, for the first time, that "Endologix did not rely solely on [the U.S.

-4-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

Clinical Study] for evidence on Nellix's safety and effectiveness." (Opp'n at 4:21-22.) In contrast to the surrounding "Factual Background" allegations, the Opposition does not cite to the FAC in support of this allegation. (*Id.*) That is because this new allegation is not in the FAC. The <u>only</u> evidence allegedly presented to the FDA is the "positive" data from the U.S. Clinical Study showing that Nellix actually "achiev[ed] the primary safety endpoint[.]" (FAC ¶ 58.)

In a further attempt to shore-up the FAC, Plaintiff tries to conflate anecdotal European reports with the FDA clinical data by alleging a common "safety" concern. The Opposition asserts that the "lynchpin of FDA approval is the safety of a device," and "[o]f course . . . the migration problem rendered Nellix unsafe—safety being the obvious and articulated prerequisite for PMA approval." (Opp'n at 2:17-18, 17:20-24; *see also id.* at 18:4-6.) The FAC, however, lacks any particularized factual allegations indicating that the purportedly concealed issue of migration from European commercial cases was relevant to, much less included in, the FDA's assessment of Nellix's "safety".[1] That silence is fatal. *See Gen. Partner Glenn Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016) ("[F]atal to Plaintiffs' case is the absence of any serious conflict between . . . concerns about methodology and Defendants' optimism about FDA approval.").

Rather than request leave to file an amended complaint adding the requisite

---

[1] The FDA typically relies on evidence from well-controlled clinical investigations, not random or anecdotal reports. "[M]erely anecdotal [reports] are not designed in a manner to provide the type of scientific data necessary to establish the safety and efficacy of a new drug." *Kuromiya v. United States*, 78 F. Supp. 2d 367, 369 (E.D. Pa. 1999). "FDA regulations set forth the essentials of an adequate and well-controlled clinical investigation. Anecdotal evidence, such as testimonials by satisfied patients or statements by doctors . . . do not constitute adequate and well-controlled investigations[.]" *Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1143 (9th Cir. 1978); *see* 21 C.F.R. § 860.7(c)(2) ("Isolated case reports, random experience, [and] reports lacking sufficient details to permit scientific evaluation . . . are not regarded as valid scientific evidence to show safety or effectiveness.")

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

facts, Plaintiff complains that Defendants have failed to <u>*disprove*</u> a link between the anecdotal reports of migration from European doctors and Nellix's purported ineligibility for FDA approval. (Opp'n at 18:3-6 ("Defendants provide no reason why adverse event reports concerning patients in Europe . . . do not bear directly on safety of the product, because there is none.")) That attempt at burden-shifting is legally unfounded. Plaintiff alone has the burden to plead particularized facts, and is not entitled to any presumptions. *See No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 950 (9th Cir. 2003) ("[U]nder the [PSLRA] the burden remains on the plaintiffs to plead with specificity the facts showing a [false or] materially misleading statement.").

### 3. The European Migration Issue Was Public Knowledge

Even if the FAC alleged a link between European migration reports and FDA approval—and it does not—it would be irrelevant because <u>the European migration issue was public knowledge and was expressly addressed by Defendants on investor calls</u>. Plaintiff's omission theory rests on the notion that Defendants failed to disclose the "migration problem" identified in Europe, and which purportedly "made the Nellix EVAS System ineligible for FDA approval in the U.S." (FAC ¶ 113.) This allegation is contradicted by the FAC itself.

The FAC admits that Defendants, in their "official presentation" at the March 2016 Symposium on Sealing Aneurysms ("SAS"), provided a "full and honest discussion and responses to questions concerning migration." (*Id.* ¶¶ 83-85.) In response to this admission, the Opposition alleges, for the first time, that "the [SAS] meeting was attended only by experts in the field" and that Defendants never "publicly disclosed the Company's 'official presentation.'" (Opp'n at 20:28-21:3.) This allegation is not in the FAC, which does not even suggest, much less allege facts showing, that the SAS conference was anything but public. It also makes no sense: why would alleged fraudsters make an "official presentation" disclosing a carefully concealed problem to the "experts" best qualified to digest

-6-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

and then disseminate that information to the market? Indeed, according to the FAC, that dissemination is precisely what happened next. (FAC ¶ 66.)

The FAC alleges that issue of Nellix migration in European commercial cases was disclosed to the public by the "experts in the field" in two sources published in August and April 2016. (Opp'n at 20:2-4; FAC ¶¶ 66-68.) Plaintiff now dismisses these sources as "unlikely to be read by anyone without a medical degree," but omits the fact that, according to the FAC, the studies were so well-known that market analysts, unprompted, asked Endologix about them in quarterly earnings calls. For example, in a call cited by Plaintiff, an analyst asked:

> I wanted to go back to migration, I know it was a small number of 2.3% [in the U.S. Clinical Study] which is extremely impressive and comparable to other studies. But in the small Liverpool study just wanted to get your thoughts [] around whether or not the group of patients though small[,] 18, there was a higher thrombus burden . . . in those patients and that was the reason for a higher migration rate?

(Ex. 7 at 8.) Defendants responded candidly:

> Addressing an analyst's question concerning migration on a June 11, 2016 Endologix conference call . . . McDermott stated: "one point about the Liverpool paper as a reminder is they chose to define migration as 4 millimeters which is less than half of the SVS definition and also found the same that we found so far in the IDE at one year, they had no reinterventions or endoleaks or even events related to those imaging findings."

(FAC ¶ 68.) Given the FAC's acknowledgment that the published studies were known to analysts and publicly addressed on earnings calls, their purported status as esoteric "scientific literature"—yet another fact not alleged in the FAC—is irrelevant. *See In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989) ("poorly-circulated or lightly-regarded publications" constitute public knowledge where there is a "sustained focus" on the information).

Notably, Defendants' June 2016 discussion with stock analysts was just one of several public disclosures of the European migration issue alleged in the FAC.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-7-
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

According to the FAC, the issue of migration "again came up when Endologix told investors in its November 1, 2016 investor conference call, that the FDA had requested that Endologix submit 'the most recent cut of the data[.]'" (FAC ¶ 69.) In that call, McDermott *again* addressed an analyst's question about the "migration in the commercial cases [Endologix has] done in Europe to date." (Ex. 11 at 6; *see also* Ex. 7 at 7.) Thus, the FAC alleges that the migration issue in Europe received sustained analyst attention and was known to the market.

This sustained public dialogue about migration—the very problem that Plaintiff alleges was omitted by Defendants—distinguishes the FAC from the cases cited by Plaintiff. In each of those cases, the information affecting FDA approval was concealed entirely, not just "downplayed". (FAC ¶ 70.) For example, when defendants in *Yanek v. STAAR Surgical Co.*, 388 F. Supp. 2d 1110 (C.D. Cal. 2005), received a letter from the FDA "detailing 'significant objectionable conditions'" affecting their FDA application, they completely failed to "notify investors of . . . the FDA's findings, or of its written response." *Id.* at 1119*; see also Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 703 (9th Cir. 2016) (defendants did not disclose "existence of the Rat Study and concerns about [the drug's] possible [cancer risk]"). The FAC, in contrast, alleges that the market was repeatedly informed of the purportedly "unsolvable" migration issue long before the first allegedly corrective disclosure on November 16, 2016.

### C. CW1 Lacks Foundation Regarding Eligibility for FDA Approval

A securities fraud complaint can only rely upon confidential witness allegations if the complaint "allege[s] with particularity facts supporting its assumptions that the confidential witnesses were in a position to be personally knowledgeable of the information alleged." *Zucco Partners*, 552 F.3d at 996. The FAC, however, does not allege that CW1 has *any* knowledge about the U.S. Clinical Study, the FDA approval process, or any of the events relating to that process that occurred after he left the Company. In fact, the FAC only attributes to

-8-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

CW1 statements regarding migration in Europe.  (FAC ¶¶ 73-93.)

The statements attributed to CW1 cannot cure the FAC's failure to plead particularized facts showing that Nellix is "ineligible" for FDA approval.  First and foremost, those statements do not touch upon that subject.  Moreover, to the extent that Plaintiff would have this Court read any statement attributed to CW1 as addressing Nellix's eligibility for FDA approval, that reading would fail for lack of foundation.  The FAC simply does not allege that CW1 knew anything about the U.S. Clinical Study, or that CW1 was even employed when the "data cut" from that study was received or presented to the FDA in November 2016, or when the full two-year data was submitted five months later.  Indeed, CW1 is not alleged to have any knowledge regarding what the Company did to investigate or address the issue of migration—*e.g.*, reviewing imaging data from the U.S. Clinical Study or changes to the Instructions for Use—in the ten months *after* his alleged departure.

The Opposition nonetheless suggests that CW1 has foundation to make *any* statements about Nellix, no matter how divorced from the timing or scope of his alleged employment, solely because "CW1 was involved in Nellix from the start." (Opp'n at 18 n.11.)  That is absurd.  Generalized knowledge about a product does not grant a witness limitless knowledge regarding all future events involving that product, including events occurring long after the witness's departure or which were outside of the scope of his responsibilities.  *See Zucco Partners*, 552 F.3d at 996 (rejecting allegations from confidential witnesses who "were not employed . . . during the time period in question and have only secondhand information about [the alleged fraud]"); *Harr v. Ampio Pharms., Inc.*, No. CV 15-03474 TJH, 2016 U.S. Dist. LEXIS 185332, at *7 (C.D. Cal. Aug. 4, 2016) (familiarity with one clinical study does "not demonstrate personal knowledge of" other studies).

For example, in *Align Technology*, the Ninth Circuit considered confidential witness allegations attributed to persons who participated in the transactions at issue, but not in the allegedly fraudulent accounting for those transactions, and

-9-
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2164860/018854-0088

rejected those confidential witness allegations for lack of foundation. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 617 (9th Cir. 2017). Similarly, in *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104 (N.D. Cal. 2009), the court rejected allegations attributed to confidential witnesses who, like CW1, were absent during "most of the Class Period[.]" *Id.* at 1115; *see also Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689, 2017 U.S. Dist. LEXIS 22374, at *35 (D. Ariz. Feb. 16, 2017) (rejecting "CW 2's observations regarding layoffs that occurred nearly one year after CW 2 was no longer employed[.]"). CW1's lack of knowledge about the U.S. Clinical Study, and his absence during the majority of the Class Period, preclude reliance on his statements as evidence of Nellix's purported ineligibility for FDA approval.

### D. The Alleged Misstatements Are Opinion Statements

The alleged misstatements in the FAC consist entirely of Defendants' opinions about potential FDA approval of Nellix. Statements of opinion are actionable only if "those who made them 'knew they were untrue at the time.'" *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1324 (2015). In attempt to lower the applicable standard, Plaintiff mischaracterizes all of Defendants' alleged misstatements as statements of fact—not opinion—because they are "not prefaced with words such as 'think' or 'believe.'" (Opp'n at 11:5.) No court has ever adopted that narrow definition.

To the contrary, it is well established that "general statements of optimism" constitute statements of opinion, whether or not the speaker prefaced the statement with the language "I think" or "I believe." *In re Syntex Corp. Secs. Litig.*, 95 F.3d 922, 933 (9th Cir. 1996). Opinion statements often use *implicitly* subjective language, such as "solid," "robust," and "strong." *In re Impac Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1097 (C.D. Cal. 2008); *see In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352, 2013 U.S. Dist. LEXIS 6977, at *104 n.182 (C.D. Cal. Jan. 16, 2013) ("fantastic" inactionable). Courts even have found the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

phrase "on track"—as in, "on track" for future FDA approval—to constitute an opinion. *See In re Copper Mt. Secs. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004); *In re Wet Seal Secs. Litig.*, 518 F. Supp. 2d 1148, 1167 (C.D. Cal. 2007).

Despite this clear authority, Plaintiff contends that "none of the statements Plaintiff challenges are opinions." (Opp'n at 11:1.) Plaintiff is wrong. All of the allegedly misleading statements—including Defendant's stated *belief* that Nellix was "on track" for FDA approval—plainly fall within the scope of opinion. (FAC ¶¶ 102, 104; *see also, e.g., id.* ¶ 108 ("[E]verything continues to look like a PMA approval"); *id.* ¶ 110 ("We remain very positive about the likelihood of approval"); *id.* ¶ 112 ("[W]e don't see anything in there that's given us heartburn").) Indeed, many of the alleged misstatements would qualify as opinions even under Plaintiff's novel and absurdly narrow requirement that the statements be "prefaced with words such as 'think' or 'believe.'" (Opp'n at 11:5.) Examples include statements that begin with "we feel", "in our view", "we expect", and "[w]e think". (FAC ¶¶ 102, 112, 114.) Plaintiff's assertion that the alleged misstatements are not opinions ignores the law, the actual language of the alleged misstatements, and the FAC's theory of falsity, *i.e.*, that the statements are misleading not because of any factual content—the FAC concedes the statements were factually correct—but because they <u>opine</u> that Nellix will be approved by the FDA.

### E. The Alleged Misstatements Are "Forward-Looking" and Accompanied by Meaningful Cautionary Language

Statements about the prospects for FDA approval are quintessential "forward-looking" statements protected under the PSLRA's safe harbor. *See In re Connetics Corp. Secs. Litig.*, No. C 07-02940 SI, 2008 U.S. Dist. LEXIS 62515, at *17-20 (N.D. Cal. Aug. 14, 2008). That is why courts have repeatedly held that statements "about the likelihood of FDA approval are forward-looking statements." *Kovtun v. Vivus, Inc.*, No. C 10-4957 PJH, 2012 U.S. Dist. LEXIS 139548, at *34 (N.D. Cal. Sep. 27, 2012).

-11-

1    According to the FAC, each of the alleged misstatements is misleading
2 because it asserts, either explicitly or implicitly, that the FDA will ultimately
3 approve Nellix.  In *Connetics Corp.*, the court dismissed claims based on
4 statements "about the timing of [FDA] approval," including statements that the
5 defendants expected the drug "to be launched midyear[.]"  2008 U.S. Dist. LEXIS
6 62515, at *18.  Those statements, like those alleged in the FAC, "enjoy special
7 protection under the PSLRA" (*id.*), and many decisions affirm that statements
8 "about the 'path to regulatory approval' and potential for 'transformative'
9 commercial success are shielded by the PSLRA[.]"  *In re Nuvelo Secs. Litig.*, No.
10 C 07-4056 VRW, 2008 U.S. Dist. LEXIS 98441, at *45 (N.D. Cal. Dec. 4, 2008).

11   Here, not only are the alleged misstatements "forward-looking" on their
12 face, they are alleged to be false only to the extent that they assert Nellix's
13 potential eligibility for <u>future</u> FDA approval.  (*See, e.g.,* FAC ¶ 102 ("[W]e feel
14 pretty good about the timeline . . . we expect the approval to be in the Q4 to latest
15 Q1 timeframe"); *id.* ¶ 104 ("[W]e remain on track with our timeline"); *id.* ¶ 110
16 ("We remain very positive about the likelihood of approval").)  These are classic
17 forward-looking statements protected by the safe harbor.  *See, e.g., City of
18 Marysville Gen. Emples. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, No. 09-
19 cv-00659-EJL, 2011 U.S. Dist. LEXIS 116893, at *54 (D. Idaho Sep. 12, 2011)
20 ("on track" found to be forward-looking statement "when read in context").

21   Furthermore, Plaintiff's characterization of the cautionary language as
22 "generic" is belied by the fact that the disclosures specifically warned investors
23 that the FDA might request follow-up data.  (Opp'n at 19:15.)  Defendants warned
24 that the "FDA might require 'additional clinical and/or non-clinical testing,' that
25 the FDA 'may not approve any of our future products on a timely basis, if at all'
26 and that if clinical trials did not produce results necessary to support regulatory
27 approval '[Endologix] will be unable to commercialize these products.'" (*Id.* at
28 19:16-19; Ex. 1 at 17-18, 24.)  As forewarned, the FDA required "additional

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-12-
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LITIOC/2164860/018854-0088

clinical testing" and did not "approve future products on a timely basis[.]" (*Id.*)

Plaintiff's gripe about Defendants not specifically mentioning migration as a potential reason for these events also misses the mark. Courts uniformly refuse to require "specification of the particular factor that ultimately renders the forward-looking statement incorrect." *Nuvelo*, 2008 U.S. Dist. LEXIS 98441, at *47 (holding nearly identical warnings meaningful even though none "included the precise problem that went wrong"); *see Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1067 (C.D. Cal. 2012) (cautionary language adequate despite not "expressly referring" to the product at issue). Here, Defendants' cautionary disclosures extensively warned of the particular risk that came to light—*i.e.*, the FDA's request for additional data. These warnings are more than sufficient.

### F. Defendants' Stock Sales Negate a "Strong Inference" of Scienter

Even if the alleged statements were not protected by the safe harbor, and they are, the FAC would still fail for lack of scienter. First, as explained above, Defendants' opinion statements were not false when made, much less intentionally false. (*See supra* Sec. II.B.) "[W]hen, in fact, there was no deception[,]" scienter is an "illogical inquiry." *DeMarco v. Depotech Corp.*, 149 F. Supp. 2d 1212, 1232 (S.D. Cal. 2001). Second, courts typically find no inference of scienter where, as here, "none of the defendants sold stock during the period between the allegedly fraudulent statements . . . In fact, it supports the opposite inference." *In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012). And here, Defendants not only refused to <u>sell</u> stock, they actually <u>bought</u> stock during the putative Class Period. (Exs. 14-15.)

Defendants' increase of their "respective holdings [] during the 'Class Period' . . . affirmatively demonstrates the absence of scienter." *In re First Union Corp. Secs. Litig.*, 128 F. Supp. 2d 871, 898 (W.D.N.C. 2001); *see In re Leapfrog Enter. Secs. Litig.*, 237 F. Supp. 3d 943, 952 (N.D. Cal. 2017) ("[S]trongly weighing against scienter is the fact that [defendants] each purchased [stock] days

-13-

after the challenged [disclosures]"). That is because, while facts showing a motive may not be essential to a "strong inference" of scienter, facts contradicting motive "dispel an inference of scienter." *In re REMEC Inc. Secs. Litig.*, 702 F. Supp. 2d 1202, 1246 (S.D. Cal. 2010). Defendants' purchases are fatal to the FAC. A claim that Defendants defrauded themselves simply is not a coherent fraud theory.

In response, Plaintiff speculates, for the first time, that Defendants' purchases were part of a 10b5-1 plan. (Opp'n at 24:14.) That allegation is not in the FAC, and it is contradicted by the lack of any such disclosure in the Form 4 disclosures. Indeed, the FAC alleges neither the existence of a 10b5-1 plan nor the repeated, periodic trading that might be consistent with such a plan. Plaintiff further speculates that Defendants bought stock because they "might have believed that they could have continued to hide the fraud." (*Id.* at 24:16-17.) That assertion runs contrary to the FAC's fraud theory, under which Defendants <u>knew</u> Nellix was "ineligible" due to an "unsolvable" migration problem and <u>inevitably</u> would be rejected by the FDA. This is not a case in which Defendants tried to "cook the books" without detection, or purportedly misled the FDA in hopes of altogether evading regulatory scrutiny. *Cf. Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1202 (N.D. Cal. 2012); *In re Juno Therapeutics, Inc.*, No. C16-1069RSM, 2017 U.S. Dist. LEXIS 91608, at *13 (W.D. Wash. June 14, 2017).

Defendants allegedly knew the stock price was destined to drop when Nellix's ineligibility was inevitably revealed, yet voluntarily purchased stock at the inflated price purportedly knowing that they would suffer considerable losses when the "truth came to light." (FAC ¶ 94.) The "most compelling inference" from the alleged facts is not that Defendants intended to defraud investors—including, themselves—but that they believed that the "positive" U.S. Clinical Study data will result in FDA approval, and still hold that belief today.

### G. The FAC Fails to Allege Loss Causation

Endologix stock dropped when the Company announced the FDA's requests

-14-

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

for follow-up patient data and Endologix's prospective, confirmatory study.  (FAC ¶ 125.)  But neither announcement revealed that Nellix is "ineligible" for FDA approval.  Indeed, Plaintiff admits "there is nothing in the record as to what the FDA actually said . . . about its reasons" for requesting additional data and that Nellix is "still eligible for approval" today.  (Opp'n at 2:4-5, 10-11; FAC ¶ 99.)

Moreover, the stock drops cannot be attributed to the presence of migration in the U.S. Clinical Study because the FAC admits that Defendants accurately disclosed "the issue of migration" in the U.S. Clinical Study data on June 11, 2016, and again on November 1, 2016—weeks before the first "corrective disclosure"—with no corresponding stock drop.  (FAC ¶¶ 66-69.)  The stock drops also cannot be attributed to the anecdotal reports of migration in Europe because the FAC does not allege that the FDA was aware of, much less considered, this purportedly *concealed* issue.  Thus, any contention that "Endologix stock fell . . . because of evidence of migration" cannot be reconciled with the *facts* alleged in the FAC. (Opp'n at 24:23-25.)  According to those facts, the stock dropped on the bad news that the FDA was not yet ready to approve Nellix.  But bad news is not fraud.  "A plaintiff does not state a claim for securities fraud merely by asserting that a company's revelation of bad news means that 'earlier, cheerier' statements must have been false."  *Stack v. Lobo*, 903 F. Supp. 1361, 1367 (N.D. Cal. 1995).

## III.   CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC.  To the extent Plaintiff seeks to include newfound allegations, explanations, and various attempts to connect the dots in the FAC, she must do so in an amended complaint.

DATED: October 25, 2017          STRADLING YOCCA CARLSON & RAUTH, P.C.

By:   /s/ *Jason de Bretteville*
JASON DE BRETTEVILLE
Attorneys for Defendants